T.C. Memo. 2016-47

UNITED STATES TAX COURT

BARRY MAURICE ANDERSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11464-14.                    Filed March 14, 2016.

Barry Maurice Anderson, pro se.

Clint J. Locke, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  Respondent determined a deficiency of $2,732 in, and a

section 6662(a) accuracy-related penalty of $546.40 in relation to, petitioner's

2010 Federal income tax.[1]  After concessions,[2] the issue for decision is whether

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986 (Code), as amended and in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]At trial respondent conceded that petitioner was not liable for the sec.

(continued...)

**[*2]** petitioner is entitled to a deduction for alimony payments he claimed on his 2010 Federal income tax return.[3]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioner resided in Alabama when he filed his petition.

Petitioner and his ex-wife separated and began divorce proceedings in the Circuit Court, Mobile County, Alabama, Domestic Relations Division (circuit court) in 2009. At the time of the separation and divorce, petitioner owned at least two parcels of real property--the marital home and a home in Dauphin Island.[4] Petitioner moved to the Dauphin Island home when he left the marital residence in 2009. Petitioner's ex-wife was not working at the time of the separation and divorce.

---

[2](...continued)
6662(a) accuracy-related penalty.

[3]Respondent also adjusted petitioner's itemized deductions on the basis of his determination to disallow a portion of petitioner's alimony deduction. That adjustment is computational and will not be discussed further.

[4]Dauphin Island is a town on a barrier island of the same name off the coast of Alabama.

**[*3]** On November 12, 2009, the circuit court entered a pretrial order of court, ordering both parties, inter alia, to "[m]aintain status quo as to payment of house note or rent, utilities, food, necessities, fixed credit obligations, etc." Petitioner continued to make the mortgage payments for the marital home and the Dauphin Island residence. Petitioner also electronically transferred $1,000 to his ex-wife every month from January to September 2010.[5] In April, June, and July 2010 petitioner transferred more than $1,000 to his ex-wife to cover additional expenses she incurred to cover necessities such as vehicle repairs. Petitioner testified that these payments were "for her spending money and other things that I had previously paid for". In addition, petitioner wrote his ex-wife checks for $1,000 each for October through December 2010. The memo lines on the October, November, and December checks state "Alimony payment # 1", "Alimony # 2", and "alimony # 3", respectively.

On November 4, 2010, the circuit court entered a judgment of divorce (judgment) dissolving petitioner's marriage. Paragraph 5 of the judgment states: "Defendant Husband will pay as rehabilitative alimony the sum of $1,000.00 per month, for twenty-four (24) months. This rehabilitative alimony amount will not be modifiable." Paragraph 9 of the judgment states: "Defendant Husband will pay

---

[5]Petitioner transferred only $960 for January.

**[*4]** as a property settlement the sum of $15,000.00, at the rate of $1,000.00 per month." Paragraph 17 of the judgment states: "Defendant Husband will commence payment of the alimony and property settlement beginning October 1, 2010." Paragraph 20 of the judgment states: "Defendant Husband will continue to pay the $1,000.00 to the Plaintiff Wife for September, and the Plaintiff will pay and be responsible for September utilities at the homeplace."

Petitioner timely filed his 2010 Federal income tax return, claiming an alimony deduction of $12,565.

Respondent mailed petitioner a notice of deficiency dated February 18, 2014, in which he determined that petitioner was entitled to an alimony deduction of only $3,000.

OPINION

Generally, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed on a return. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

**[*5]** Under certain circumstances the burden of proof as to factual matters may shift to the Commissioner pursuant to section 7491(a). Petitioner did not argue for a burden shift under section 7491(a), and the record does not establish that the prerequisites for a burden shift have been met; therefore, the burden of proof remains his.

I.     Alimony Generally

Section 215(a) allows a deduction for alimony payments made during the payor's taxable year. Alimony means any "payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71." Sec. 215(b). An alimony payment is defined as any payment in cash that satisfies the following four requirements: (1) the payment is received by (or on behalf of) a spouse under a divorce or separation instrument; (2) the divorce or separation instrument does not designate the payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215; (3) the payor and payee spouses are not members of the same household at the time the payments are made; and (4) there is no requirement to make payments or substitutes therefor after the payee spouse's death. Sec. 71(b)(1). All four requirements must be met for payments to qualify as alimony or separate maintenance. Jaffe v. Commissioner, T.C. Memo. 1999-196.

**[\*6]** II.  Petitioner's 2010 Payments

Respondent disallowed petitioner's deduction for alimony payments except for the payments evidenced by the checks for $1,000 negotiated in October, November, and December 2010.  The judgment states that petitioner's alimony payments would begin in October 2010.  In issue are the electronic transfers petitioner made to his ex-wife's bank account in January through September 2010.

A.  Petitioner's January Through August 2010 Payments

Petitioner argues that the $1,000 monthly payments he made in January through August 2010 were not voluntary payments but were "for * * * [his ex-wife's] spending money and other things that I had previously paid for."  Petitioner argues he made the payments pursuant to the circuit court's pretrial order and that this order is a divorce or separation instrument and meets the other requirements of section 71.[6]

---

[6]Respondent's line of questioning about the circuit court's pretrial order focused on the fact that the word "alimony" was not used in the pretrial order but the word "maintenance" was, making the payments maintenance payments instead of alimony.  Respondent's attempt to differentiate the two is unnecessary as sec. 71 allows a deduction for amounts received as "alimony or separate maintenance payments."

**[*7]** The circuit court's pretrial order is a preprinted form with blanks for the parties' names, a case number, the date of trial, the date of the order, and two circuit court judges' signatures.

The term "divorce or separation instrument" as defined in the Code includes a written instrument incident to a decree of divorce or separate maintenance.[7] Sec. 71(b)(2)(A). "Section 71 speaks only in terms of a 'written instrument'; it does not dictate the medium which may be used nor the form of writing which the instrument must take." Prince v. Commissioner, 66 T.C. 1058, 1067 (1976). The written instrument is not required to state a definite amount of support to be paid. Jacklin v. Commissioner, 79 T.C. 340, 348 (1982).

"Incident" as an adjective is defined as "[d]ependent upon, subordinate to, arising out of, or otherwise connected with (something else, usu. of greater importance)". Black's Law Dictionary 777 (8th ed. 2004). A "decree" is a court's final judgment or any court order, especially one in a matrimonial case. Id. at 440. The circuit court's pretrial order is not dependent upon, subordinate to, or arising out of a decree of divorce or separate maintenance. It is, however, "otherwise"

---

[7]Sec. 71 was amended by the Deficit Reduction Act of 1984, Pub. L. No. 98-369, sec. 422(a), 98 Stat. at 795, effective for divorce or separation instruments executed after December 31, 1984. Before the amendment a "written instrument" was incident to "such divorce or separation" and not specifically related to the decree itself.

**[*8]** connected with a decree of divorce as the circuit court sent the order to both parties before the April 15, 2010, trial that produced the judgment. Therefore, the circuit court's pretrial order is a written instrument incident to a decree of divorce or separate maintenance.

The pretrial order requires the parties to "[m]aintain status quo as to payment of house note or rent, utilities, food, necessities, fixed credit obligations, etc." Petitioner testified that the $1,000 payments he made to his ex-wife were for "spending money" and "other things" for which he had previously paid. He also testified that his ex-wife was not working at that time. Additionally, petitioner testified that the payments to his ex-wife were not voluntary and that he would not have made them but for being required to under the circuit court's pretrial order to maintain the status quo. The Court finds petitioner's testimony credible. The mortgage payments for the two real properties--the marital residence where his ex-wife lived and a home in Dauphin Island where he lived during the pendency of the divorce--were separately debited from his checking account.

The pretrial order requires the parties to maintain the status quo for a wide range of payments with the inclusion of "etc." at the end of the first sentence describing the duties and responsibilities of the parties. Petitioner's ex-wife was not working at the time of the divorce and would not have had the means to pay

[*9] for "utilities, food, necessities, fixed credit obligations, etc." without petitioner's monthly payments to her.

Petitioner's January through August 2010 payments were cash payment transfers from his bank account and were received by his ex-wife under a divorce or separation instrument.

Petitioner's payments also meet the second and third requirements, that the payments were not designated as not being deductible by the payor and not included in income by the payee in the written instrument and were not received while the payor and payee spouses were members of the same household. The circuit court's pretrial order makes no mention of the tax ramifications of the payments, and petitioner testified that he had moved out of the marital home in September 2009.

That leaves the final requirement, that the payments cease upon the death of the payee spouse. Because the pretrial order is silent as to whether these payments meet that requirement, the Court must look to State law for the answer. See Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Hoover v. Commissioner, 102 F.3d 842, 845-846 (6th Cir. 1996), aff'g T.C. Memo. 1995-183; see also Kean v. Commissioner, T.C. Memo. 2003-163, aff'd, 407 F.3d 186 (3d Cir. 2005); Gilbert

[*10] v. Commissioner, T.C. Memo. 2003-92, aff'd sub nom. Hawley v. Commissioner, 94 F. App'x 126 (3d Cir. 2004).

Petitioner argues that alimony payments cease after the death of the payee spouse under Alabama law. Respondent argues that Alabama law is silent on the issue. While there is no rule in the Alabama statutes about the termination of alimony payments upon the death of the recipient spouse, the question has been resolved through Alabama caselaw.

Alabama has two categories of alimony--alimony in gross and periodic alimony. Lacey v. Lacey, 126 So. 3d 1029 (Ala. Civ. App. 2013). Alimony in gross is considered compensation for the recipient spouse's inchoate marital rights and may represent a division of marital assets where liquidation of those assets is not practicable. Id. at 1031 (citing Hagar v. Hagar, 299 So. 2d 743, 749 (Ala. 1974)). The payment must be made from the payor's present estate at the time of the divorce. Id. (citing Hagar, 299 So. 2d at 750). For a payment to be alimony in gross, the following requirements must be met: (1) the time of and amount of the payment must be certain and (2) the right to alimony must be vested. Id. (quoting Cheek v. Cheek, 500 So. 2d 17, 18 (Ala. Civ. App. 1986)). The Alabama Supreme Court has held that "the term 'vested' simply signifies that an award of 'alimony in gross' is not subject to modification." Id. at 1034 (quoting Hagar, 299 So. 2d at

**[\*11]** 750). "In other words, alimony in gross is a form of property settlement." Id. at 1031 (citing Hagar, 299 So. 2d at 749). Alimony in gross must be unequivocally stated or necessarily inferred from the language of the instrument. Kilgore v. Kilgore, 572 So. 2d 480, 482 (Ala. Civ. App. 1990) (citing Trammell v. Trammell, 523 So. 2d 437 (Ala. Civ. App. 1988)).

Periodic alimony is a payment for the future support of the payee spouse payable from the current earnings of the payor spouse. Lacey, 126 So. 3d at 1031 (citing Hagar, 299 So. 2d at 750). The purpose of periodic alimony "is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage." Id. (quoting O'Neal v. O'Neal, 678 So. 2d 161, 164 (Ala. Civ. App. 1996)). "In Alabama, periodic alimony payments cease at the death of either spouse." Kelley v. State Dep't of Revenue, 796 So. 2d 1114, 1118 (Ala. Civ. App. 2000) (citing Borton v. Borton, 162 So. 529 (Ala. 1935)).

Petitioner's payments in January through August 2010 were to maintain the financial status quo of the parties until a judgment of divorce was entered. In other words, the purpose of the payments was to maintain the status the parties had enjoyed during the marriage. See Lacey, 126 So. 3d at 1031. Petitioner's

[*12] payments in January through August 2010 were periodic alimony payments under Alabama law and, therefore, would have ended upon the death of either spouse. See Kelley, 796 So. 2d at 1118. Thus, the January through August 2010 payments meet the requirement of section 71(b)(1)(D).

Petitioner's January through August 2010 payments meet the definition of alimony under section 71. Therefore, petitioner is allowed a deduction for the payments as alimony under section 215 for 2010.

B. Petitioner's September 2010 Payment

Paragraph 20 of the judgment required petitioner to "continue to pay the $1,000 to the Plaintiff Wife for September". Petitioner's September 2010 payment was an extension of the periodic payments he was making under the circuit court's pretrial order, and the judgment required him to continue making these payments until his payments began under the judgment. Therefore, the September payment also meets the requirements of section 71 and is deductible as alimony under section 215.

The Court has considered all of the arguments made by the parties, and, to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

**[*13]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.